48 F.3d 1221
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 John S. BERGMANN, Plaintiff-Appellant,
v.
Gary R. McCAUGHTRY, et al., Defendants-Appellees.
 No. 94-1259.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 2, 1995.[1]
Decided March 3, 1995.
Rehearing and Suggestion for Rehearing En Banc
Denied March 28, 1995.
 
 Before POSNER, Chief Judge, and CUMMINGS and BAUER, Circuit Judges.
 
 ORDER
 
 1
 John S. Bergmann, an inmate at the Waupun Correctional Institution in Waupun, Wisconsin, filed a pro se civil rights action pursuant to 42 U.S.C. Sec. 1983, seeking injunctive, declaratory and monetary relief, and alleging that defendants interfered with his personal mail in violation of the First Amendment. Following evidence that plaintiff was harassing or threatening his ex-wife, defendants imposed a no-contact order prohibiting plaintiff from communicating with his ex-wife, her current husband, or her two-year-old son. The district court entered summary judgment in favor of defendants. For the reasons stated in the attached district court Opinion and Order dated December 27, 1993, the judgment of the district court is AFFIRMED.
 
 ATTACHMENT
 IN THE UNITED STATES DISTRICT COURT
 FOR THE WESTERN DISTRICT OF WISCONSIN
 
 2
 John S. Bergmann, Plaintiff,
 
 
 3
 v.
 
 
 4
 Gary R. McCaughtry, Warden, Ron Torsella, Capt. in Security,
 
 
 5
 Greg Schaller, Lt. in Security, Mike Carratt,
 
 
 6
 Social Worker, Defendants.
 
 OPINION AND ORDER
 93-C-0244-C
 
 7
 This is a civil action for injunctive, declaratory and monetary relief brought pursuant to 42 U.S.C. Sec. 1983 in which plaintiff, an inmate at the Waupun Correctional Institution, contends that defendant prison officials are violating his First Amendment rights by prohibiting him from corresponding with his ex-wife or with her two-year-old child, whom plaintiff alleges is his. Defendants deny that their actions violated plaintiff's First Amendment rights and have moved for summary judgment.
 
 
 8
 I find that defendants have shown there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). I conclude that plaintiff's claim is addressed to the prohibition on his correspondence with his putative son; that plaintiff has failed to show that he has a First Amendment right to send letters to a child who cannot yet read and whose mother refuses to read the letters to the child; and that even if he has such a right, defendants' impairment of that right is supported by valid penological objectives.
 
 
 9
 From the facts proposed by the parties, I find the following facts are both undisputed and material.
 
 FACTS
 
 10
 At all times relevant to this action plaintiff John S. Bergmann was incarcerated at the Waupun Correctional Institution in Waupun, Wisconsin. Defendants in this matter are Warden Gary R. McCaughtry, Captain Ron Torsella, Lieutenant Greg Schaller and Social Worker Michael Carrett. At all relevant times, defendants were employed at the Waupun Correctional Institution.
 
 
 11
 On February 17, 1993, Waupun Correctional Institution received a complaint from plaintiff's ex-wife Melinda McCullough, alleging that plaintiff had threatened her life during a telephone conversation. McCullough requested that plaintiff be prohibited from further communication with her. In response to the complaint, defendant Schaller issued a no-contact order that prohibited plaintiff from further communications with McCullough.
 
 
 12
 On March 8, 1993, Dwayne McCullough, Melinda McCullough's husband, called the institution and spoke with defendant McCaughtry's secretary, Donna Poortenga. Dwayne McCullough complained that he and his wife had been receiving harassing and threatening telephone calls and letters from plaintiff over a two year period and that although the McCulloughs had returned many of the letters unopened, plaintiff had begun sending the letters by certified mail. Dwayne McCullough stated that he had changed his post office box and phone number several times, but each time plaintiff had managed to obtain the new address and phone number. He requested that plaintiff be prevented from harassing his family. Poortenga asked Dwayne McCullough to submit his complaints in writing.
 
 
 13
 On March 22, 1993, Poortenga received a letter from Melinda McCullough in which she stated that she feared for her life and the life of her family when plaintiff was released. After receiving the letter, defendant Schaller investigated the McCulloughs' complaint and discovered that plaintiff had been sending letters addressed to Melinda McCullough's two-year-old son. The letters contained expressions of love and affection for the boy as well as accusations that the McCulloughs were abusing him, that they were unfit parents and that they had refused to tell the child that plaintiff is his natural father.[1] In the McCulloughs' opinion, the letters were intended for them although they were addressed to the child as a means of circumventing the no-contact order.
 
 
 14
 On March 23, 1993, defendant Schaller interviewed plaintiff concerning the McCulloughs' complaint. Plaintiff told Schaller that the McCulloughs' complaint was in retaliation for a paternity and custody suit plaintiff had filed in Indiana alleging that he was the father of Melinda McCullough's son. He asserted that the letters to the child were sent out of love for him and to provide documentary evidence for his suit. Defendant Schaller concluded that the McCulloughs' claims of harassment were substantiated and ordered plaintiff to have no further contact with the McCulloughs except through legal counsel.
 
 
 15
 On March 24, 1993, plaintiff met with defendant Torsella and stated his objections to the no-contact order issued by defendant Schaller. After receiving plaintiff's objections defendant Torsella upheld the no-contact order.
 
 
 16
 On March 25, 1993, plaintiff wrote defendant McCaughtry, objecting to the no-contact order and asking that it be rescinded. Defendant McCaughtry reviewed plaintiff's letter and concluded that the order should be upheld and that it was proper for defendant Schaller to prohibit plaintiff from circumventing the February 17 no-contact order by addressing correspondence to the two-year-old.
 
 OPINION
 
 17
 In his original complaint plaintiff complained of the institution's refusal to allow him to write or call Melinda McCullough. However, it appears from his brief in opposition to defendants' motion for summary judgment that he has abandoned his challenge to the prohibition of his mailings and telephone calls to Melinda McCullough and is focusing only on defendants' finding that the letters to his putative son are a means of circumventing the prohibition order. He contends that forbidding him to correspond with his son violates both his and his son's First Amendment rights to communication.
 
 
 18
 If the intended recipient of plaintiff's letters were old enough to read, it might be necessary to consider to what extent a child's guardian can determine what mail or other reading material comes into the home. In Rowan v. Post Office Dep't, 397 U.S. 728, 736-37 (1974), the United States Supreme Court held that a parent or guardian has that authority with respect to children or wards under nineteen. Stating that "a mailer's right to communicate must stop at the mailbox of an unreceptive addressee," the Court upheld the constitutionality of a statute permitting householders to insulate themselves and their households from "pandering advertisements" the recipients found to be offensive. The Court balanced the right to communicate against the right "to be let alone," id. at 736, and concluded that the Constitution does not compel the viewing of communications that the recipient deems offensive. The content of the mailing is irrelevant: if the recipient objects to it, he or she has the right not to receive it. Id. at 737.
 
 
 19
 Whether Rowan would control letters from a putative father to his son is a question that need not be addressed in this case. A two-year-old child is too young to read letters sent to him. In the particular circumstances of this case, where the child is too young to read and the adults in his home have made it plain they will not read letters aloud, it is a futile gesture for plaintiff to send the letters. Thus, it is unnecessary to consider the application of Procunier v. Martinez, 416 U.S. 396 (1974), in which the Supreme Court recognized that restrictions on written communications between inmates and persons outside the prison implicate the First Amendment liberties of free citizens as well as the rights of prisoners:
 
 
 20
 Communication by letter is not accomplished by the act of writing words on paper. Rather, it is effected only when the letter is read by the addressee. Both parties to the correspondence have an interest in securing that result, and censorship of the communication between them necessarily impringes on the interest of each.
 
 
 21
 Id. at 408. Implicit in the holding in Procunier is the negative holding that no First Amendment right is at stake when a prisoner wants to write to an addressee who has indicated an affirmative desire not to receive his letters. In that situation, institution officials do not violate any First Amendment right of the prisoner when they refuse to deposit his letters in the mail.
 
 
 22
 Even if the First Amendment were implicated in plaintiff's efforts to write to an unwilling recipient, defendants have shown that their action furthered a substantial governmental interest in preventing the public from threats and harassment from prison inmates. This is a valid interest of penal administration. Berdella v. Delo, 972 F.2d 204, 209 (8th Cir.1992); White v. Woodroff, 378 F.Supp. 1004 (W.D.Va.1974). Moreover, defendants have shown that the restriction is no broader than it needs to be. Although defendants prohibited plaintiff from contacting the McCulloughs or Melinda McCullough's son directly, the no-contact order exempted any communication that might be directed to them through plaintiff's attorney.
 
 
 23
 It is possible that plaintiff is arguing that he has been denied due process by defendants. However, he was provided an interview with the officer investigating the complaint and an opportunity to appeal the decision that he would not be allowed to write to Melinda McCullough's son. The opportunity to be heard and to appeal satisfy any due process concern that the order was arbitrary or capricious. I conclude that plaintiff has failed to show that defendants acted improperly in concluding that his letters to the child were an attempt to avoid the February no-contact order.
 
 
 24
 Finally, the no-contact order presented no potential to interfere either with plaintiff's right to counsel or with plaintiff's ability to prosecute his paternity suit against Melinda McCullough. It merely prevents plaintiff from continuing to harass the McCulloughs.
 
 ORDER
 
 25
 IT IS ORDERED that defendants' motion for summary judgment is GRANTED. The clerk of court is directed to enter judgment for defendants and close this case.
 
 
 26
 Entered this 27th day of December, 1993.
 
 BY THE COURT:
 
 27
 /s/ Barbara B. Crabb
 
 BARBARA B. CRABB
 District Judge
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 Defendants have proposed as a fact that the letters contain allegations that Dwayne McCullough used illegal drugs. However, defendants do not provide copies of any letters that substantiate this allegation. Therefore, it cannot be found as a fact